[No. 1688.]

# IN RE KELLY, ON BEHALF OF OSUNA.

1. CRIMINAL LAW—EVIDENCE—STATEMENTS OF PROSECUTRIX—RES GESTÆ. Statements made by prosecutrix the day after an alleged rape are too remote to constitute part of the *res gestæ*.

2. SAME—CONFESSIONS—EVIDENCE—SUFFICIENCY. On a preliminary examination on a charge of rape, evidence by a medical expert that from an examination of prosecutrix soon after the alleged offense he thought she had had intercourse with some one, and by other witnesses that they had seen marks of violence on her person, was sufficient, when coupled with an admission by defendant shortly after the offense that he had committed it, to justify the commitment of defendant to answer for the crime.

3. SAME—PRELIMINARY EXAMINATION—PROOF REQUIRED. In order to justify a committing magistrate in holding an accused to answer to a charge, the evidence need not show guilt beyond a reasonable doubt.

ORIGINAL PROCEEDING. Application by Frank P. Kelly, on behalf of H. Osuna, for a writ of *habeas corpus*. **Writ dismissed.**

The facts sufficiently appear in the opinion.

*Wm. Woodburn*, for Petitioner:

I.   The statement made by the prosecutrix, Harry Averill, on the night of the 4th of October, the crime of rape being alleged to have been committed the preceding night, reduced to writing in the presence of Lovegrove, farmer of the Indian Reservation, and one Hance, a telegraph operator, and signed by them as witnesses, was hearsay and should not have been admitted in evidence at the preliminary examination. The law provides that the witnesses shall be examined in the presence of the defendant, and may be cross-examined in his behalf. (Comp. Laws, 4121.)

II.   The testimony of Lovegrove and Hance was clearly inadmissible, on the ground that it is hearsay. (*State v. Campbell*, 20 Nev. 126; *People v. Mayes*, 66 Cal. 597, cited in 114 Cal. 556; *People v. Stewart*, 90 Cal. 213.)

III.   The complaint of the prosecutrix, made at noon of the day after the crime was alleged to have been committed, even if she had testified as a witness, was no part of the *res gestæ*, and was as inadmissible as the statement made on the night following. It was incumbent on her to excuse or jus-

tify the delay in making the complaint. (*People* v. *Lambert*, 120 Cal. 172; *People* v. *Stuart*, 97 Cal. 238; *State* v. *Ah Loi*, 5 Nev. 99.)

IV. The record shows that the prosecutrix did not testify at the preliminary examination, and, therefore, no complaint of the crime made by her, no matter how recent, is admissible in evidence. (*State* v. *Campbell*, 20 Nev. 126; Hughes, Crim. Law and Procedure, 85; *State* v. *Meyers*, 46 Neb. 152; *State* v. *Mitchell*, 68 Iowa, 116.)

V. The testimony of Wilson and Jones, deputy sheriff, as to the admissions of the defendant to his wife on a railroad car after his arrest is clearly inadmissible because there was no proof that a crime had been committed, and the *corpus delicti* cannot be established by the confession of the defendant. (Hughes, Crim. Law and Procedure, sec. 3093; *People* v. *Simonsen*, 107 Cal. 346.)

VI. Upon the authorities before cited I respectfully suggest that Osuna was held to answer a criminal charge not proved to have been committed, and on purely hearsay testimony.

*James G. Sweeney*, Attorney-General, for the State:

I. Under the circumstances and the peculiar nature of the crime of rape alleged in this case the statement made by complainant, signed by her in the presence of witnesses, and the testimony of said witnesses to what complainant informed them of the perpetrated rape within twelve hours after the commission of the crime are so contemporaneous in point of time with the commission of the crime under all the circumstances disclosed by the record, that said statement and testimony of witnesses Hance and Lovegrove become part of the *res gestæ* and is therefore not hearsay evidence as contended by counsel for petitioner. (*State* v. *Ah Loi*, 5 Nev. 89; Jones on Evidence, secs. 340, 347, 349; Am. & Eng. Ency. Law, p. 523.)

II. In view of the complaint filed, written statement of complainant, and sworn testimony of Hance and Lovegrove being part of the *res gestæ*, sufficient proof of *corpus delicti* was proved to have made the confession of defendant, Osuna,

as overheard and testified by Sheriff Jones and Wilson, clearly admissible. (See full review of authorities found in notes in 6 Am. St. Rep. 242–251.)

III.   The complaint filed and proven by sworn testimony of witnesses as disclosed in record on file, and the defendant having waived his privilege of making a statement, thoroughly warranted the committing magistrate in binding defendant to appear before the grand jury, and under the ruling of this court in *State* v. *Ah Bau*, 10 Nev. 264, the application of petitioner for release should be denied.

IV.   The testimony of Dr. Pasch and the direct testimony of witnesses Hance and Lovegrove, wherein they testified to seeing marks of ropes on wrists and finger-nail scratches on neck and nose of complaining witness, in itself was sufficient legal admissible support of the complaint filed to have warranted the justice of the peace, if there was no other testimony, to believe sufficient probable cause existed of the guilt of the accused, and to have warranted the committing magistrate in binding over the defendant to appear before the grand jury.

By the Court, NORCROSS, J.:

Upon the application of Frank P. Kelly, in behalf of H. Osuna, a writ of *habeas corpus* was issued returnable before this court.

It appears from the return of the writ that H. Osuna is held in the custody of J. F. Bradley, sheriff of Esmeralda County, upon a commitment of the justice of the peace of Hawthorne Township, to answer the charge of rape committed upon one Harriett Averill on the night of the 3d of October, 1905. It is complained by petitioner that this commitment was issued without reasonable or probable cause, and in support of this contention the following specific charges are made respecting the testimony introduced upon the preliminary examination of the defendant: "That the said prosecuting witness, Harriet Averill, upon whom the said crime of rape was alleged to have been committed, failed to appear and testify at said examination, but a written statement, signed by one Harry Averill, and attested by two wit-

nesses, a day after· the commission of said alleged offense, was admitted in evidence by the said justice of the peace against the objection of the attorney of the said Osuna; that no legal testimony was given showing that Harry Averill, who signed said statement, was the same person as Harriet Averill, mentioned in said complaint, and upon whom the said rape was alleged to have been committed; that no legal evidence was introduced by the state at said examination, which is shown by a certified copy of the testimony taken at said examination, and which is hereunto annexed, and made a part of this petition; that there was no proof that the crime of rape, or any other offense, had been committed on Harriet Averill or upon Harry Averill, or that there was sufficient cause to believe the said Osuna guilty of committing a public offense."

It appears from the record that Osuna was arrested and brought before the justice of the peace at Hawthorne on the 6th day of October, 1905, and the complaint of the prosecuting witness, charging him with the crime of rape, read to him. At the request of the defendant, the examination was continued until October 10th, at which time the defendant appeared with his attorney, and the examination was proceeded with. It appears that the complaining witness was not present, and her name was called at the door without response. The deputy sheriff, A. N. Jones, was then called and sworn as a witness, and testified that, when he brought the defendant to Hawthorne, the complainant and her mother accompanied them. Upon being asked, "Where is Harry Averill now?" answered, "I think she has gone." The absence of this important witness, who is called in the testimony both as Harriett and as Harry Averill, and who is shown at one time to have been within reach of the process of the court, is not accounted for in the record, nor does it appear what steps were taken to procure her testimony at the hearing. Upon this showing of the absence of the witness Harriett Averill, the district attorney offered in evidence what purported to be a written statement of the facts of the alleged rape, signed by the said Harriet Averill on the evening of the 4th of October, in the presence of witnesses,

and declared in their presence to be a true statement of the facts of the alleged crime. This written statement was admitted in evidence over the objection of the defendant's attorney. A witness to this written statement, Robert A. Lovegrove, farmer, in charge of the Walker Lake Indian Reservation, was permitted, over defendant's objection, to testify that he had written this statement for the complainant as she detailed the facts, and that he read the same over to her before she signed it, and that he warned her of the seriousness of the charge she was making against the defendant. S. W. Hance, a telegraph operator, residing at the place where the crime is alleged to have been committed, was also permitted to testify, over defendant's objection, that he was a witness to this written statement, and heard the complainant detail the facts therein stated; also, that at noon of the same day the said Harriett Averill had come to his office and had made the same charge against the defendant to him, and that at her solicitation he dictated a telegram to her mother, who was then in San Francisco, relative to the assault, and requesting her to come home at once. A copy of this telegram was offered, and admitted in evidence over defendant's objection. Dr. F. C. Pasch, a physician residing at Hawthorne, was also permitted to testify, over defendant's objection, that at the time of making an examination of the person of the complainant, some days after the alleged offense was committed, she informed him that the defendant had made a criminal assault upon her, and with violence accomplished his purpose.

The position taken by counsel for the petitioner that these statements of the complainant were made at a time too remote to form a part of the *res gestæ*, were hearsay, and for that reason were inadmissible, must be sustained. (*State* v. *Campbell*, 20 Nev. 126, 17 Pac. 620.) It appears, however, from the record that after the complainant had signed the written statement, the witness Lovegrove called in the defendant, and that the witness read the statement over to him; that at the same time the witness warned the complainant that it was a serious charge she was making, and that she had better be careful what she said; that she

said it was true; that he then told the defendant that he
would place him under arrest, to appear before a court to
answer the charge; that he asked the defendant what he had
to say to the charge, and that the defendant said he "would
answer before a court, or when it was time to make them."
This portion of the testimony of the witness does not seem
to have been considered by counsel upon either side in the
presentation of this case, as standing in a different position
from the testimony relative to the statements of the com-
plainant heretofore referred to, made without the presence of
the defendant. We think, however, it presents a question
worthy of careful consideration of court and counsel, but, as
it has not been presented in the briefs or argument in this
matter, and as, in the view we take of the case, the action of
the magistrate, in holding the defendant to answer, can be
sustained upon other portions of the testimony alone, the
question will not now be determined.

It is urged by counsel for petitioner that, with the state-
ments made by the complainant excluded, there is no compe-
tent proof of the *corpus delicti*. Two witnesses, C. O. Wilson
and A. N. Jones, the deputy sheriff, gave testimony relative
to an admission made by the defendant while he was being
taken upon the train from the place where the offense is
alleged to have been committed to Hawthorne. That portion
of the testimony of the witness Wilson relative to the admis-
sion is as follows: "This defendant was brought into the
car at a place called Schurz, between here and Reno, with
Mr. Jones and a young lady I afterwards found to be Harry
Averill, and they took possession of a seat I had occupied up
to that time. I took the seat across the aisle. Seeing the
man with bracelets on excited more or less curiosity, and
when he came into the car the young lady went into the car
behind, and got another lady, which I learned was her mother.
This mother came in, and was talking to the defendant. The
mother asked him what made him do it. The defendant
says, 'I don't know.' The mother was hysterical, and she
made the remark, 'I ought to kill you.' He assented; he
did, yes. 'Well,' she says, 'why don't I do it?' and repeated
the remark several times, and about that time she fainted

and swooned away." The testimony of the deputy sheriff relative to this admission was substantially to the same effect.

Counsel for petitioner say in their brief: "The testimony of Wilson and Jones, deputy sheriff, as to the admissions of the defendant to his wife on a railroad car after his arrest are clearly inadmissible, because there was no proof that a crime had been committed, and the *corpus delicti* cannot be established by the confession of the defendant." It will be conceded that the overwhelming weight of authority in this country is to the effect that an extrajudicial confession or admission of a prisoner, not corroborated by independent proof of the *corpus delicti*, will not justify conviction. It is not requisite, however, that the crime charged be conclusively established by evidence independent of the confession or admission. It is sufficient if there be other competent evidence tending to establish the fact of the commission of the crime.

In *People* v. *Badgley*, 16 Wend. (N. Y.) 53, Nelson, C. J., said: "Full proof of the body of the crime—the *corpus delicti*—independently of the confession is not required by any of the cases, and in many of them slight corroborating facts were held sufficient."

In the case of *State* v. *Hall*, 31 W. Va. 505, 7 S. E. 422, the court said: "We know of no decisions anywhere that hold the admissions of the defendant are not competent evidence tending to prove the *corpus delicti*. Such admissions may not be sufficient proof of the *corpus delicti*, but they certainly are competent evidence tending to prove that the crime charged has been committed."

In the case of *Matthews* v. *State*, 55 Ala. 187, where many authorities are cited and reviewed, the court, by Bricknell, C. J., says: "Nor must we be understood as affirming that the proof of the *corpus delicti* must be as full and conclusive as would be essential if there was no confession to corroborate it. Evidence of facts and circumstances attending the particular offense, and usually attending the commission of similar offenses, or of facts to the discovery of which the confession has led, and which would not probably have existed if the offense had not been committed, or of facts

having a just tendency to lead the mind to the conclusion that the offense has been committed, would be admissible to corroborate the confession. The weight which would be accorded them, when connected with the confession, the jury must determine, under proper instructions from the court."

The case of *People* v. *Simonsen*, 107 Cal. 346, 40 Pac. 440, cited in petitioner's brief, is in line with the authorities above quoted. The court in that case say: "The term '*corpus delicti*' means exactly what it says. It involves the element of crime. Upon a charge of homicide, producing the dead body does not establish the *corpus delicti*, it would simply establish the *corpus*; and proof of the dead body alone, joined with a confession by the defendant of his guilt, would not be sufficient to convict, for there must be some evidence tending to show the commission of a homicide before a defendant's confession would be admissible for any purpose. * * * To be sure, the appearance of the dead body, the nature of the wounds, the evidences of a struggle, the physical circumstances surrounding the affair, may furnish evidence of the *corpus delicti*—they may indicate that a crime has been committed—but there must be proof of the fact from some source other than the defendant's admissions." The court cites other examples, and then, referring to the case under consideration, says: "Laying aside the evidence of defendant's admissions, there is nothing whatever in the record even pointing toward the commission of a crime."

See, also, *People* v. *Jones*, 31 Cal. 567; *State* v. *Lamb*, 28 Mo. 219; *State* v. *Guild*, 10 N. J. Law, 180, 18 Am. Dec. 414.

In the case of *State* v. *Ah Chuey*, 14 Nev. 92, 33 Am. Rep. 530, this court held that "proof of the *corpus delicti* may be established by circumstantial evidence, provided it is satisfactory."

In the case before us we think there was competent evidence, independent of the admissions of the defendant, tending to establish the *corpus delicti*. Dr. Pasch testified that on Saturday, four days after the alleged offense was committed, he made an examination of the person of the complainant, Harriett Averill, who is shown to be but slightly over 15 years of age; that he found that her hymen was

inflamed, and at some time evidently had been lacerated; that the young lady was rather hysterical; and would only permit ocular inspection and digital examination, on account of the extreme tenderness of the parts. He further testified: "From the evidence I found, I would state that in all probability Miss Averill at some time had had intercourse with a member of the opposite sex." There was other testimony of the witness relative to what appeared to be blood stains upon the complainant's skirt. The witness Hance, who saw the complainant at noon of October 4th, testified that she was then agitated and nervous, and appeared to have been crying; that he observed marks of violence upon her nose and upper lip; that she showed him marks upon her wrists; also a mark on the side of her throat, and that her throat seemed to be swollen and red. The witness Lovegrove also testified to observing on the evening of October 4th a mark upon the nose and on the side of complainant's throat, apparently scratches. It also may be gathered from the evidence that the defendant, a man of but 21 years of age, and the complainant, his stepdaughter, were at the time of the alleged assault occupying a box car as a home (the defendant being in the employ of the railroad), the defendant's wife, mother of the complainant, being absent, and the complainant being left in defendant's care. We think these facts and circumstances tended to prove the *corpus delicti*, and were sufficient, together with the defendant's admissions, to justify the magistrate in holding the defendant to answer.

We are not called upon on this hearing to pass upon the sufficiency of this evidence to warrant the conviction of the defendant, and upon that question express no opinion. In this connection it is proper to observe that a magistrate, in holding a defendant to answer for a crime, is not required to have submitted evidence sufficient to establish the guilt of the person charged beyond a reasonable doubt. As was said in a recent decision (*In re Mitchell* [Cal. App.] 82 Pac. 347): "In order to hold defendant and put him on his trial, the committing magistrate is not required to find evidence sufficient to warrant a conviction. All that is required is that there be a sufficient legal evidence to make it appear that 'a

public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof.'"

The writ issued herein is dismissed.