## DAVID PETER KNORR, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 17672

December 29, 1987                                      748 P.2d 1

*Morgan D. Harris,* Public Defender, and *Robert L. Miller,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland* and *David Barker,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant David Peter Knorr appeals from a judgment of conviction of two counts of attempted sexual assault and two counts of sexual assault. We conclude that defense counsel's ineffectiveness coupled with the state's misconduct, deprived appellant of a fair trial. We, therefore, reverse appellant's conviction and remand the case to the district court for a new trial.

### THE FACTS

Appellant was the stepfather of the alleged victims in this case, Amy and Jesse. Amy, eleven years old at the time of trial, testified to a continuing pattern of sexual abuse by appellant spanning the nine-month period from September, 1984, to May, 1985. Because appellant worked nights, he was frequently left home alone with Amy and Jesse after their mother left for work. Amy alleged that the sexual assaults took place on school mornings after Amy would exit the shower in the master bedroom. On these occasions, appellant allegedly would perform cunnilingus upon Amy and would force Amy to perform fellatio upon him. In addition, Amy testified to one specific incident wherein she claimed that appellant called both her and Jesse into the master bedroom and directed Amy to perform fellatio upon appellant. According to Amy, appellant then had Amy perform an act of fellatio upon Jesse. Finally, appellant directed Jesse to perform an act of cunnilingus upon Amy. Jesse, nine years old at the time of trial, corroborated Amy's version of this incident. However, when Amy first reported the incident to the police, she denied that any sexual act took place between her and Jesse. Amy instead reported that she and Jesse ran from the room when appellant left the room.

The state, over appellant's objection, also presented the testimony of another young girl, Bridgette. Bridgette, a friend of Amy's, alleged that on four separate occasions, appellant conducted a "sex school" with Bridgette and Amy. On each occasion, Bridgette claimed that appellant directed Amy and Bridgette to perform fellatio upon him, he performed cunnilingus on each girl, and appellant also had sexual intercourse with each girl. Although Bridgette testified that Amy was present on all four

occasions, Amy denied that any of the so-called "sex school" sessions took place.[1]

Appellant adamantly and repeatedly denied sexually abusing Amy, Jesse or Bridgette, and denied that any "sex school" sessions took place. Appellant maintained that he had virtually no opportunity to molest Amy because he spent nearly every morning at his neighbor's home drinking coffee until after Amy and Jesse had left for school. At trial, the neighbor corroborated appellant in this regard. It was appellant's theory that Amy and Jesse had fabricated the stories of sexual abuse in retaliation for appellant's disciplinary methods. There was evidence adduced at trial to support this theory. For example, both Amy and Jesse admitted on cross-examination that they hated appellant because, according to them, he yelled at them and made them do their chores. More important, however, Amy admitted that, approximately one month after she had reported the alleged abuse, when angered by a neighbor, Amy told the neighbor that she "had put one man away" and "she could do it again." Finally, several defense witnesses testified that Amy and Jesse had poor reputations for truth and veracity.

The jury found appellant guilty of all four counts, and the district court sentenced appellant to serve twenty years on each of the two counts of attempted sexual assault and life with the possibility of parole on each of the two sexual assault counts. The two twenty-year sentences were to be served concurrently, and the life sentences were to be served consecutively to one another and consecutively to the twenty-year sentences. This appeal followed.

## DISCUSSION

Repeatedly during his case-in-chief, appellant attempted, through counsel, to elicit evidence of his good moral character from defense witnesses. The state objected to this line of questioning, and the district court sustained the objection each time. As a result, appellant was precluded from bringing before the jury evidence of his good moral character. Appellant contends that the district court erred in excluding such evidence. The state maintains that appellant was not attempting to introduce evidence of good morality, but was instead attempting to elicit the witnesses' opinions as to whether appellant committed the crimes with which he was charged.

---

[1]We note that Bridgette's testimony was highly suspect because the other alleged participants in the "sex school" sessions, *i.e.*, Amy and appellant, denied that any such sessions occurred. Thus, the probative value of Bridgette's testimony is questionable.

Through the testimony of Bridgette, the state attempted to show that appellant had a specific emotional propensity for sexual aberration. *See* McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978), *overruled on other grounds,* Meador v. State, 101 Nev. 765, 7.11 P.2d 852 (1985). Thus, appellant was entitled to introduce evidence of his good moral character to rebut that inference. Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983). Although appellant was attempting to introduce such evidence, defense counsel, due to his ineffectiveness, was unable to phrase his questions in such a manner as to elicit the proper responses.[2] Counsel's ineffectiveness is apparent from the face of the record.[3] In a case such as this where the question of appellant's guilt was by no means certain and appellant's character was directly in issue, counsel's inability properly to present evidence of good character seriously hampered appellant's defense.

Appellant was also prejudiced by the following comment made by the prosecutor made during cross-examination of appellant.

Q. [by the prosecutor]: You want to tell us why you and Karen Knorr got divorced?
A. [by appellant]: We had difficulties over religion, her folks, and me wanting to buy my own truck and go over the road.
Q. Isn't the reason that Karen divorced you, because you were running around with a teenage girl?

This question was not relevant to any proper line of inquiry at the trial, and was not supported by any admissible evidence. Further, the teenage girl referred to above was apparently a young adult. Thus, it appears that this question was deliberately phrased in a manner calculated to prejudice the jury against appellant. Although the district court sustained defense counsel's immediate objection, the damage had occurred with the asking of the question. Any answer to the question would have made little difference. *See* State v. Bailey, 647 P.2d 170 (Ariz. 1982).

The state argues that the errors of which appellant complains are harmless. We disagree. The prejudice caused by the prosecu-

[2]For example, rather than asking the proposed character witnesses for their opinions as to appellant's reputation in the community for good morality, defense counsel repeatedly asked the witnesses whether they believed appellant committed the crimes with which he was charged. Further, when objections to counsel's questions were sustained, counsel did not attempt to rephrase his questions in a manner that would elicit admissible evidence.

[3]We note that appellant's present counsel did not represent appellant at trial.

tor's improper question, coupled with the prejudice caused by defense counsel's inability to offer relevant and probative character evidence, cannot be deemed harmless in light of the close question of appellant's guilt. We cannot say that, in the absence of error, the verdicts would be the same. *See* Big Pond v. State, 101 Nev. 1, 692 P.2d 1288 (1985). Accordingly, we reverse appellant's conviction and remand this case to the district court for a new trial.