# IN THE SUPREME COURT OF THE STATE OF NEVADA

AMADEO SANCHEZ, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68492

**FILED**

OCT 27 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK



### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

On appeal we consider whether (1) the district court erred by admitting testimony regarding Appellant Amadeo Sanchez's alleged history of dealing drugs, cartel involvement, and of an alleged assault against his wife; (2) the district court abused its discretion by prohibiting Sanchez from impeaching witness Kristin Alarcon-Hernandez with a prior inconsistent statement regarding her opinion of the murder victim, Daniel Carter; (3) the district court abused its discretion by allowing jury instructions regarding felony murder; and (4) the prosecutor committed prosecutorial misconduct by misstating the elements of first-degree murder and allegedly incorrectly stating the facts about what led to Carter's murder during closing arguments.

We conclude that the district court did not err in admitting testimony regarding Sanchez's alleged history of dealing drugs, cartel involvement, and an alleged assault against Daisy Sanchez as res gestae evidence under NRS 48.035(3). We further conclude that the district court did not abuse its discretion in prohibiting Sanchez from impeaching Alarcon-Hernandez, that the district court did not abuse its discretion in

allowing jury instructions for felony murder, and that the prosecutor did not commit prosecutorial misconduct during closing arguments.

*Res gestae evidence*

Sanchez argues the district court erred by allowing the State to introduce evidence of prior bad acts[1] as res gestae evidence, specifically details regarding (1) Sanchez's alleged history of dealing drugs, (2) Sanchez's alleged involvement with a drug cartel, and (3) an alleged assault that Sanchez committed against Daisy Sanchez. We disagree.

"[A] trial court's determination of whether to admit or exclude such evidence will not be disturbed on appeal absent manifest error." *Walker v. State*, 116 Nev. 442, 446, 997 P.2d 803, 806 (2000). More specifically, "[t]he decision to admit or exclude evidence of separate and independent offenses rests within the sound discretion of the trial court, and will not be disturbed unless it is manifestly wrong." *Daly v. State*, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983).

Nevada's res gestae statute, NRS 48.035(3), permits the district court to admit evidence that "is so closely related to . . . [the] crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime."

---

[1]We note that Sanchez elected to testify and admitted to many of the prior bad acts that he now argues should have been excluded from evidence. Sanchez's confirmation of his own prior bad acts renders any potential error Sanchez complains of harmless. *See Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (explaining that the test for nonconstiutional harmless error "is whether the error had substantial and injurious effect or influence in determining the jury's verdict" (internal quotation marks omitted)), *holding modified by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008).

 

Accordingly, "[t]he State may present a full and accurate account of the crime, and such evidence is admissible even if it implicates the defendant in the commission of other uncharged acts." *Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 181 (2005). However, the "complete story of the crime" doctrine described in NRS 48.035(3) must be "construed narrowly" and is limited to the statute's express provisions. *Id.* Thus, "the controlling question is whether witnesses can describe the crime charged without referring to related uncharged acts." *State v. Shade*, 111 Nev. 887, 894, 900 P.2d 327, 331 (1995). "If the court determines that testimony relevant to the charged crime cannot be introduced without reference to uncharged acts, it must not exclude the evidence of the uncharged acts." *Id.*

At trial, the State advanced both first-degree murder and felony murder theories. The State alleged that Sanchez and Carter had a history of dealing drugs together and that Sanchez entered Carter's residence while in possession of a firearm and with the intent to collect a drug debt from Carter in an effort to repay a drug cartel.

Under the State's felony murder theory, to establish that Sanchez entered the home with the requisite intent to commit a felony, the State sought to admit evidence of Sanchez's alleged history of dealing drugs, drug payment and collection efforts, and that, immediately before entering the home, Sanchez pointed the alleged murder weapon at Daisy Sanchez as res gestae evidence under NRS 48.035(3).

Additionally, under the State's first-degree murder theory, the State needed to establish premeditation, deliberation, and willfulness. *See* NRS 200.030(1)(a). Thus, the State needed to demonstrate that Carter's alleged drug debt to Sanchez combined with Sanchez's alleged

involvement with a drug cartel served as a motive for Carter's murder that required Sanchez to plan the confrontation and subsequent murder.

Accordingly, the testimony was necessary to paint a complete picture of the crime under either theory of the case. Exclusion of this testimony would have prohibited key witnesses from describing how Sanchez knew Carter and why Sanchez entered Carter's residence, preventing the State from providing the "complete story of the crime" to the jury regarding how and why the confrontation with Carter arose. The State could not introduce testimony for this purpose without reference to Sanchez's alleged history of dealing drugs, alleged cartel involvement, and the alleged drug debt that Carter owed Sanchez. Therefore, the district court did not manifestly err in allowing evidence of Sanchez's alleged prior bad acts as res gestae under NRS 48.035(3).

*Prior inconsistent statement*

Sanchez argues that the district court abused its discretion in prohibiting him from impeaching Alarcon-Hernandez's statements that she was not afraid of Carter and that she thought Carter was a "nice guy." Specifically, Sanchez argues the district court erred in concluding that Alarcon-Hernandez's previous statement was inadmissible hearsay, overly cumulative, and the prejudicial impact of the testimony substantially outweighed its probative value. We disagree.

A district court's decision to admit evidence will not be disturbed on appeal absent an abuse of discretion. *Chavez v. State*, 125 Nev. 328, 344, 213 P.3d 476, 487 (2009). The district court's determination as to whether a statement constitutes hearsay within an exception is also reviewed for an abuse of discretion. *Harkins v. State*, 122 Nev. 974, 980, 143 P.3d 706, 709 (2006). Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. NRS 51.035.

Hearsay is generally inadmissible, unless there is a statutory exception. NRS 51.065(1).

Sanchez sought to impeach Alarcon-Hernandez with a prior statement, made to police officers, that she "heard that [Carter] had shot somebody in the head or something like that." The statement is hearsay because Alarcon-Hernandez was recounting an out-of-court statement and the statement was offered to prove the truth of the matter asserted—that Carter had, indeed, shot someone, and thus had propensity or reputation for violence. No statutory exception applies to Alarcon-Hernandez's statement. Thus, the statement is inadmissible hearsay, and the district court did not err in excluding it.

Additionally, Sanchez thoroughly questioned Alarcon-Hernandez regarding a number of Carter's prior bad acts in an effort to impeach her opinion of Carter. Accordingly, the introduction of this prior statement would have been cumulative. Finally, given the fact that the statement alleges Carter committed a murder or attempted murder, the prejudicial impact of the testimony substantially outweighed its probative value. Therefore, the district court did not abuse its discretion in excluding Alarcon-Hernandez's prior inconsistent statement.

*Felony murder jury instructions*

Sanchez argues that if the district court had not erroneously admitted Sanchez's prior bad acts, there would be insufficient evidence demonstrating Sanchez killed Carter during the commission of an enumerated felony, rendering the jury instructions regarding felony murder improper. We disagree.

This court reviews the district court's decision regarding jury instructions for an abuse of discretion. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). Additionally, "[t]he standard for reviewing

the sufficiency of the evidence is not whether this [c]ourt is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could have been convinced to that certitude by the evidence it had a right to consider." *Rossana v. State*, 113 Nev. 375, 383, 934 P.2d 1045, 1050 (1997) (internal quotation marks omitted). However, "a defendant is entitled to acquittal if upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Stephans v. State*, 127 Nev. 721, 721, 262 P.3d 727, 734 (2011) (internal quotation marks omitted).

Here, Sanchez's argument hinges on whether his own prior bad acts were improperly admitted; however, the acts were properly admitted as res gestae evidence under NRS 48.035(3) and confirmed by Sanchez on direct examination. Thus, there was substantial evidence to justify a felony murder jury instruction. The felony murder jury instruction was therefore proper and the district court did not abuse its discretion in providing it to the jury.

*Prosecutorial misconduct*

Sanchez argues that the State committed prosecutorial misconduct because the prosecutor incorrectly presented as fact the statement that Sanchez pointed a gun at Carter and demanded money in addition to skewing the definitions of premeditation and deliberation for the jury during closing argument. We disagree.

This court reviews unobjected-to prosecutorial misconduct for plain error, examining whether the error "had a prejudicial impact on the verdict when viewed in context" or whether the error "seriously affects the integrity or public reputation of the judicial proceedings." *Rose v. State*, 123 Nev. 194, 208-09, 163 P.3d 408, 418 (2007). "[A]n error that is plain from a review of the record does not require reversal unless the defendant

demonstrates that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (internal quotation marks omitted).

"When considering claims of prosecutorial misconduct, this court engages in a two-step analysis." *Id.* at 1188, 196 P.3d at 476. First, this court must determine whether the prosecutor's conduct was improper. *Id.* "Second, if the conduct was improper, [this court] must determine whether the improper conduct warrants reversal. With respect to the second step of this analysis, this court will not reverse a conviction based on prosecutorial misconduct if it was harmless error." *Id.*

*Description of the crime made during closing.*

"This court has long recognized that a prosecutor should be unprejudiced, impartial, and nonpartisan, and he should not inject his personal opinion or beliefs into the proceedings or attempt to inflame the jury's fears or passions in the pursuit of a conviction." *Id.* at 1192, 196 P.3d at 478 (internal quotation marks omitted). However, where there is overwhelming evidence in the record to support the jury's verdict, even aggravated prosecutorial remarks will not justify reversal. *See Riley v. State*, 107 Nev. 205, 213, 808 P.2d 551, 556 (1991). Indeed, a prosecutor's "statements should be considered in context, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004) (internal quotation marks omitted).

The prosecutor's description of Sanchez pointing a gun at Carter and demanding payment did not constitute misconduct. The statement was supported by the evidence and was given in the context of describing the State's burden of demonstrating malice aforethought.

Testimony at trial supported this description of the facts. Thus, the description of Sanchez pointing a gun at Carter made during closing argument was not improper.

*Misstated elements of first-degree murder made during closing.*

During closing argument, the prosecutor described each of the elements of first-degree murder to the jury by referring to corresponding jury instructions. In doing so, it appears that the prosecutor misspoke while describing the element of deliberation. Sanchez alleges this misstatement is grounds for reversal. We disagree.

While describing the elements of first-degree murder, the prosecutor stated that "[d]eliberation is the process of determining upon a course of action to kill . . . [w]hen [Sanchez] pointed that gun demanding money, he is having that deliberation." The prosecutor went on to state that Sanchez could deliberate even after firing the first shot and hearing Carter beg him to stop shooting, and stated "[t]hat's premeditation. That's deliberation." Immediately following that statement, the prosecutor stated "[w]hen you talk about the specific definition of premeditation, it's a design . . . in this case, he went in with the gun, and the State maintains that he had a plan when he went in." Given the context of the prosecutor's argument, it does not appear the prosecution deliberately skewed the elements of deliberation and premeditation; rather, it appears the prosecution misspoke. Additionally, Sanchez does not contend that the first-degree murder jury instructions were incorrect.[2]

---

[2]We note that Jury Instruction Number 22, which described the elements of first-degree murder, complied with the requirements set forth in *Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 714 (2000).

Here, the prosecutor's description of the elements of first-degree murder was not improper, nor was it an error of law. Further, despite the prosecutor's misstatements, the proper elements of the crime were given to the jury in Jury Instruction 22. As such, given the evidence against Sanchez, any error was likely harmless because the jury was properly instructed on the elements of first-degree murder. Therefore we ORDER the judgment of the district court AFFIRMED.

_____, J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

cc:    Hon. Scott N. Freeman, District Judge
       Law Office of Thomas L. Qualls, Ltd.
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A